## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HANON SYSTEMS USA, LLC, | : |
| Plaintiff, | : |
| v. | : Court No. 26-01173 |
| UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; and RODNEY S. SCOTT in his official capacity as Commissioner of U.S. Customs and Border Protection, | : |
| Defendants. | : |

## **COMPLAINT**

Plaintiff Hanon Systems USA, LLC ("Plaintiff"), by and through undersigned counsel, brings this action against U.S. Customs and Border Protection; Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the United States of America.

1. Plaintiff is a U.S.-based importer of merchandise subject to the challenged duties.

2. Beginning in February of 2025 through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.* as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3. This Court[1] and the Federal Circuit[2] both held that IEEPA does not authorize these tariffs.

4. The Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District Court for the District of Columbia[3] on November 5, 2025.

5. On February 20, 2026, the Supreme Court affirmed the decision of the Federal Circuit that IEEPA does not authorize the imposition of these tariffs.[4]

6. Although the Supreme Court invalidated the tariffs, this separate action remains necessary because importers that have paid IEEPA duties, including Plaintiff, are not guaranteed a refund of amounts previously paid based on the Supreme Court's decision in the absence of their own judgment and judicial relief.

7. Accordingly, for itself, Plaintiff seeks (i) a final determination that the IEEPA duties are unlawful; and (ii) a final judgment awarding to Plaintiff a full refund of all IEEPA duties plus interest which have been collected from, or assessed against Plaintiff to date, as a result of the executive orders challenged in this lawsuit, as well as those it will continue to pay.

## PARTIES

8. Plaintiff Hanon Systems USA, LLC is a manufacturer and importer of automotive thermal management solutions.

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into

---

[1] *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025).
[2] *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.).
[3] *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).
[4] *Learning Resources, Inc. v. Trump, President of the United States*, No. 24-1287 (U.S. 2026).

the United States.

10.    Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.    Defendants are referred to collectively in this complaint as "CBP" or "Defendants."

## JURISDICTION AND STANDING

13.    The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025).

14.    The Court has all the powers at law and in equity as a United States district court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order all appropriate relief, including declaratory judgments, reliquidation of entries, and injunctions. 28 U.S.C. § 2643(a)(1), (c)(1).

15.    Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. A determination that the IEEPA tariffs assessed against Plaintiff are unlawful and unconstitutional, and a judgment awarding refunds of same to Plaintiff, and enjoining their future collection, would redress those injuries.

16.    Due process requires that the Defendant refund the IEEPA tariffs that Plaintiff has deposited and that Defendant has unlawfully collected. *See McKesson Corp. v. Div. of Alcoholic*

*Beverages & Tobacco*, 496 U.S. 18, 36–39 (1990).

17. Defendant has already represented that it would "issue refunds" of the IEEPA tariffs in successfully moving for a stay of this Court's order invalidating those tariffs. *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 25 (Fed. Cir. May 29, 2025); *see V.O.S. Selections, Inc. v. Trump*, 2025 WL 1649290, at *1 (Fed. Cir. June 10, 2025) (en banc) (per curiam) (granting a stay pending appeal).

18. Defendant has also represented that it "would not oppose the Court's authority to order reliquidation of entries of merchandise subject to the" IEEPA tariffs to avoid an injunction of liquidation. *Princess Awesome, LLC v. U.S. Customs & Border Prot.*, Court No. 25-00078, Joint Stipulation ¶ 2, ECF No. 17 (Ct. Int'l Trade May 28, 2025).

19. Defendant has also represented that it does "not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal," adding that plaintiffs were "guaranteed payment … should the Court's decision be upheld," in successfully moving for a stay of a district court's order invalidating the IEEPA tariffs. *Learning Res., Inc. v. Trump*, No. 25-cv-01248-RC, ECF No. 41 at 13 (D.D.C. June 2, 2025); *see id.*, ECF No. 42 (June 3, 2025) (granting stay pending appeal).

20. Because of these representations in court filings made to obtain and avoid judicial intervention, Defendant is judicially estopped from contesting this Court's authority to order IEEPA-tariff refunds. Slip Op. 25-154, *AGS Co. Automotive Sols. v. U.S. Customs & Border Prot.*, Consol. Court No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025); *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

**GENERAL PLEADINGS**

I.    **President Trump orders a series of tariffs, invoking IEEPA for his authority**

    A.    **The IEEPA Tariff Executive Orders**

21.    On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders."

22.    The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[5] imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

23.    The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[6] declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

24.    Finally, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of*

---

[5] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[6] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025).

*China* ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce."[7] The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

25. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

26. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*. ("February 5 Amendment").[8]

27. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[9] The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

---

[7] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[8] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).
[9] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

28. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[10] The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

29. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies … suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

30. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14,259, 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.[11]

31. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025), *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*.[12] Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

---

[10] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).
[11] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).
[12] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).

32.     In implementing his Executive-Order-based tariff regime, the Defendant directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

33.     On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed.

34.     In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others ("Challenged Tariff Orders").

**B.     CBP's Implementation of the Unlawful Tariffs**

35.     CBP is charged with the assessment and collection of duties, including the IEEPA duties, on imported goods based upon the origin of the goods and the tariff classification thereof, in accordance with the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). 19 U.S.C. §§ 1202, 1500, 1502.

36.     Ordinarily, within 314 days of entry, CBP "finalizes" the appraisement of the entered merchandise, and confirms the value, classification and applicable rate of duty. See 19 U.S.C. § 1500 and 19 U.S.C. § 1504.

37.     Once the final amount of duty owed is determined, CBP "liquidates" the entry and posts public notice of that liquidation confirming whether the declarations made at import remain as presented by the importer of record or whether more money is owed or a refund is forthcoming.

38.     Once liquidation has occurred, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other actions taken by CBP thereby. See 19 U.S.C. § 1514(a).

39. Once the 180-day protest period has expired, an importer of record's ability to challenge CBP's actions is considered time-barred. However, this Court, through its powers as a United States District Court (28 U.S.C. § 1585), can enter a money judgment against the United States and can order all appropriate relief, including declaratory judgments, reliquidation of entries, and injunctions. 28 U.S.C. § 2643(a)(1), (c)(1).

## II.     IEEPA Does Not Authorize Tariffs

40. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

41. Of these statutes, it is IEEPA alone that the President and CBP have utilized to impose and collect the IEEPA duties.

42. However, on May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections*, holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

43. Sitting en banc, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. See *V.O.S. Selections, Inc. v Trump*, 149 F. 4th 1312 (Fed Cir. 2025).

44. Separately, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. See *Learning Resources Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources, Inc.*

45. On November 5, 2025, argument on the consolidated cases was held before the Supreme Court.

46. On February 20, 2026, the Supreme Court affirmed the Federal Circuit's verdict, holding that IEEPA does not authorize the President to impose tariffs.[13]

### III. Plaintiff Paid Preliminary IEEPA Duties

47. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

48. Plaintiff's imports subject to IEEPA entered the United States under new HTSUS codes from foreign countries.

49. Plaintiff has paid IEEPA duties on a continuous basis.

50. The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have as a general matter begun to liquidate as of December 15, 2025.

## STATEMENT OF CLAIMS

## COUNT I

### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES*

51. Plaintiff incorporates paragraphs 1-50 above by reference.

52. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held that IEEPA authorizes the President only to "investigate, regulate, or prohibit" importation but not to impose tariffs on imports. The Court also held that neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

---

[13] *Learning Resources, Inc. v. Trump*, No. 24-1287 (U.S. 2026).

53. The Federal Circuit and Supreme Court affirmed that interpretation, holding that – based on doctrines of non-delegation or major questions – Congress did not clearly cede the President the authority to impose tariffs under IEEPA.

54. The Challenged Tariff Orders are materially identical to those struck down by the Court in *V.O.S. Selections* insofar as they purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

55. For the same reasons set forth in *V.O.S. Selections*, those Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

56. Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Supreme Court, find the Challenged Tariff Orders unlawful as to Plaintiff, enjoin CBP from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT II

### (DECLARATORY RELIEF, 28 U.S.C. § 2201)

57. Plaintiff incorporates paragraphs 1-56 above by reference.

58. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

59. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

60. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

61. This Court should exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

(1) Rule and hold that, consistent with the Supreme Court's decision in Learning *Resources Inc.*, the President lacks authority under IEEPA to set tariffs;

(2) Rule that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

(3) Rule that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

(4) With respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

(5) Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law;

(6) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

    (7)    Grant such further relief as this Court deems proper.

                              Respectfully submitted,

                              PAGE FURA, P.C.
                              *Attorneys for Plaintiff*

                    By:    /s/ Jeremy Ross Page
                              Jeremy Ross Page
                              Shannon E. Fura
                              939 W. North Avenue, Suite 750
                              Chicago, IL  60642
                              Tel.: 312-781-6100

Dated:     February 24, 2026